# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**EDWARD A. MCGLONE**
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputy Attorneys General
Indianapolis, Indiana

FILED
Apr 07 2014, 9:16 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF: L.P., A CHILD ALLEGED TO BE A CHILD IN NEED OF SERVICES, K.K., MOTHER, | ) ) ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 77A01-1310-JC-427 ) |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE SULLIVAN SUPERIOR COURT
The Honorable Robert E. Springer, Judge
Cause No. 77D01-1306-JC-18

April 7, 2014

OPINION - FOR PUBLICATION

**BAILEY, Judge**

**Case Summary**

K.K. ("Mother") appeals the determination that her child, L.P., was a Child in Need of Services ("CHINS"). She presents the sole issue of whether the evidence was sufficient to support that determination. We reverse.

**Facts and Procedural History**

On June 14, 2013, a caseworker from the Sullivan County Department of Child Services ("DCS") visited Mother's home as a result of a hotline report, observed that Mother was on her way out to work, and then requested that Mother come to the DCS offices at a more convenient time for an interview. Mother agreed to do so. On June 17, 2013, Mother submitted to an oral drug screen and tested positive for methamphetamine.

DCS removed L.P. to the residence of his maternal great-grandmother and initiated CHINS proceedings. Over the next several weeks, Mother voluntarily submitted to additional drug screens; all were negative. At a fact-finding hearing conducted on August 7, 2013, case manager Michele May testified that Mother had one positive and ten negative drug screens. She opined that L.P. appeared to be "well-cared for," and further testified that she had no reason to believe that Mother had any continued involvement with a houseguest whose presence had caused DCS concern. (Tr. 38.) At the conclusion of the hearing, the juvenile court commended Mother for her employment and "exemplary" conduct during the proceedings but observed that methamphetamine has caused "tragic" effects in the county and DCS has a "zero tolerance level for that" with which the court affirmatively agreed. (Tr.

67-68.) The juvenile court entered its conclusion of law, findings of fact, and order determining L.P. to be a CHINS, as follows:

> The Court being duly advised finds that the child's date of birth is January 22, 2013 and is six (6) years [sic] of age, and is a child in need of services as alleged by the petition.
>
> The Court now finds that said child is a child in need of services as defined by IC 31-34-1-1. In support for this conclusion of law, the following findings of fact are found: The mother admitted to using methamphetamine shortly before the initiation of the investigation in this case and she tested positive for methamphetamine.

(App. 23.) L.P. was returned to Mother's care, with continued DCS involvement. Mother appeals.

## Discussion and Decision

The State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. Ind. Code § 31-34-12-3; In re N.E., 919 N.E.2d 102, 105 (Ind. 2010). The State's burden of proof was described by our Indiana Supreme Court in In re K.D., 962 N.E.2d 1249, 1253 (Ind. 2012):

> There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS. DCS must first prove the child is under the age of eighteen; DCS must prove one of eleven different statutory circumstances exist that would make the child a CHINS, and finally, in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court.

Here, DCS alleged that L.P. was a CHINS under the general category of neglect as defined in Indiana Code section 31-34-1-1. As such, the State was required to prove that "the child's physical or mental condition is seriously impaired or seriously endangered as a result

3

of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision."

When we review a case where the trial court has entered findings of fact and conclusions of law, we will not set aside the judgment of the trial court unless it is clearly erroneous. In re S.W., 920 N.E.2d 783, 787 (Ind. Ct. App. 2010). We first consider whether the evidence supports the factual findings; second, we consider whether the findings support the judgment. Perrine v. Marion County Office of Child Services, 866 N.E.2d 269, 273 (Ind. Ct. App. 2007). Findings are clearly erroneous when the record contains no facts to support them directly or by inference. Id. A judgment is clearly erroneous if it relies upon an incorrect legal standard. Id. In conducting our review, we will neither reweigh the evidence nor judge the credibility of the witnesses. Id. at 274. Rather, we consider only the evidence and reasonable inferences drawn therefrom which support the judgment. Id. While we defer substantially to findings of fact, we do not do so as to conclusions of law. Id. at 273-74.

Mother does not challenge the juvenile court's factual findings. Indeed, she testified that she used methamphetamine offered by a friend on one occasion when L.P. was not in her physical care. Rather, Mother contends that the factual finding that she used methamphetamine on a single occasion cannot support the juvenile court's conclusion of law that L.P. was a CHINS.

In support of her argument, Mother directs our attention to Perrine, 866 N.E.2d at 269.[1] In Perrine, the mother was arrested as part of a routine probation sweep that yielded

---

[1] Mother also relied upon Perrine in the CHINS proceedings. However, counsel for DCS urged the juvenile

4

paraphernalia commonly used for methamphetamine consumption in the bedroom of a houseguest. Id. at 271. The mother admitted to having used methamphetamine a few days earlier and was arrested. Id. at 272. DCS filed a petition alleging that the mother's fourteen-year-old daughter was a CHINS based upon the mother's failure to provide her child with a safe and stable home, free from drug use and neglect. Id. The child was found to be a CHINS and the mother appealed. In reviewing the record, this Court observed that the evidence did not support a finding that the mother had used methamphetamine in front of her daughter. Id. at 276. The CHINS determination was reversed, with the Perrine Court holding that "a single admitted use of methamphetamine, outside the presence of the child and without more, is insufficient to support a CHINS determination." Id. at 277.

Here, our review of the evidence likewise reveals a single use of methamphetamine, outside the presence of the child. The State acknowledges this, but urges that we reach a conclusion opposite that in Perrine because "since Perrine was decided in 2007, methamphetamine use has been recognized as an epidemic." State's Brief at 17.

We are mindful that "juvenile court judges are often faced with the challenge of balancing multiple factors and multiple voices in a CHINS case" and "[t]he process of the CHINS proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding." In re K.D., 962 N.E.2d at 1255. Although methamphetamine use may indeed be epidemic, here the relevant inquiry was whether L.P. was seriously impaired or endangered and in need of care and supervision unlikely to be provided without coercive

court to disregard this precedent because "it's a Court of Appeals [case]" and "so it's not the law of the State." (Tr. 66.)

5

intervention of the court.    Here, as in <u>Perrine</u>, the State proved a single use of methamphetamine; likewise, there is no suggestion that it took place in the presence of the child.  And here, even more compelling than the circumstances in <u>Perrine</u>, Mother thereafter voluntarily and consistently took drug screens with negative results.

The factual finding of an isolated use of methamphetamine, without more, does not support the conclusion of law that L.P. was a CHINS.

Reversed.

KIRSCH, J., and MAY, J., concur.